EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Oficina de la Procuradora de las Mujeres<br><br>Peticionaria<br><br>v.<br><br>Corteva Agriscience Puerto Rico, Inc., Advance Service Professional, Inc.<br><br>Peticionario | Certiorari<br><br>2025 TSPR 146<br><br>216 DPR ___ |

Número del Caso: CC-2025-0009

Fecha: 30 de diciembre de 2025

Tribunal de Apelaciones:

    Panel III

Representante legal de la parte peticionaria:

    Lcda. Astrid Piñeiro Vázquez
    Procuradora de las Mujeres

    Lcda. Madeline Bermúdez Sanabria
    Procuradora de las Mujeres Interina

    Lcdo. Nelson D. Vélez Colón

    Lcdo. Javier José Dilán Pérez


Representante legal de la parte recurrida:

    Lcda. Anita Montaner Sevillano
    Lcda. Natalia Marín Catalá
    Lcda. Lourdes C. Hernández Venegas
    Lcdo. Alberto Tabales Maldonado


Materia: Ley de la Oficina de la Procuradora de las Mujeres (OPM)-Jurisdicción de la OPM para fiscalizar, investigar e imponer multas a las agencias gubernamentales y las entidades privadas que incumplan con la política pública del Estado o violen los derechos de las mujeres amparados por la Constitución y las Leyes de Puerto Rico.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Oficina de la Procuradora de las Mujeres<br><br>Peticionaria<br><br>v.<br><br>Corteva Agriscience Puerto Rico, Inc., Advance Service Professional, Inc.<br><br>Recurridos | *Certiorari*<br><br><br><br>CC-2025-0009 |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 30 de diciembre de 2025.

Hoy nos compete examinar la jurisdicción de la Oficina de la Procuradora de las Mujeres (OPM) para fiscalizar, investigar e imponer multas administrativas al amparo de su ley habilitadora, Ley Núm. 20-2001, *infra*. Esto surge ante alegadas violaciones a los derechos de una mujer trabajadora por discrimen por razón de sexo bajo el marco de la Ley Núm. 3, *infra*, la Ley Núm. 69, *infra*, y la Ley Núm. 100, *infra*.

Estas leyes laborales otorgan jurisdicción a los tribunales para proveer los remedios indemnizatorios en ellas contemplados. No obstante, las facultades de fiscalizar, investigar e imponer multas administrativas tienen un propósito distinto, pues permiten hacer valer los poderes de la agencia y disuadir de la transgresión de los

derechos y la política pública que le fue encargado supervisar.

En vista de lo anterior, concluimos que la ley habilitadora de la OPM le otorgó jurisdicción para fiscalizar, investigar e imponer multas a las agencias gubernamentales y las entidades privadas que incumplan con la política pública del Estado o violen los derechos de las mujeres amparados por la Constitución y las Leyes de Puerto Rico. Este mandato se extiende a "cualquier asociación, organización, instituto o persona natural o jurídica en la que una mujer labore", por lo que puede comprender las leyes laborales que impactan a las mujeres trabajadoras en nuestra jurisdicción cuando proceda conforme a derecho.[1]

Eliminar las facultades de investigar e imponer multas administrativas de la OPM para obligar al cumplimiento de la política pública sobre los derechos de las mujeres en el ámbito laboral inevitablemente equivaldría a hacer inoperante a la OPM en una esfera de gran impacto en la vida de las mujeres. A su vez, sería contrario a la intención legislativa y a la política pública que inspiró su creación.

## I

El 9 de noviembre de 2023, la OPM inició un proceso investigativo dirigido a Corteva Agriscience Puerto Rico, Inc. (Corteva) y Advance Service Professional, Inc. (ASP)(en conjunto parte recurrida) ante las alegaciones que

---

[1] Art. 2(b) Ley Núm. 20-2001, según enmendada, conocida como *Ley de la Oficina de la Procuradora de las Mujeres* (1 LPRA sec. 311).

presentara la Sra. Erilyn Ramos Santiago (señora Ramos Santiago) sobre violaciones a sus derechos constitucionales y laborales como mujer trabajadora.

La señora Ramos Santiago ocupó varios puestos en Corteva a través de la contratación de la compañía de servicios de empleo temporero ASP entre el 29 de octubre de 2021 y mediados del 2023. Sostuvo que tras "notificar sobre su estado de embarazo fue retirada de su empleo hasta que entregara una certificación m[é]dica que hiciera expresión de que su embarazo no fuere uno de alto riesgo. Entregada la certificación requerida la Sra. Ramos Santiago no ha sido reincorporada a su empleo".[2]

Luego de ciertas solicitudes de información y producción de documentos a la parte recurrida, el 20 de marzo de 2024 la OPM presentó la Querella Núm. GM2024CV00213 ante el Tribunal de Primera Instancia en representación de la señora Ramos Santiago. En ella reclamó violaciones a la Ley Núm. 100 de 30 de junio de 1959, según enmendada, conocida como *Ley Antidiscrimen de Puerto Rico* (29 LPRA Sec. 146 *et seq.*); la Ley Núm. 69 de 6 de julio de 1985, según enmendada, conocida como *Ley para garantizar la igualdad de derecho al empleo* (29 LPRA Sec. 1321 *et seq.*); y la Ley Núm. 3 de 13 de marzo de 1942, según enmendada, conocida como *Ley de Protección a las Madres Obreras* (29 LPRA Sec. 467 *et seq.*).[3]

---

[2] Apéndice, pág. 1.
[3] Apéndice, pág. 183.

Días más tarde, el 1 de abril de 2024, la OPM comenzó un *Procedimiento Adjudicativo: Orden para Mostrar Causa* ante el posible incumplimiento de la parte recurrida con la Ley Núm. 20-2001, según enmendada, conocida como *Ley de la Oficina de la Procuradora de las Mujeres* (1 LPRA sec. 311 *et seq.*), el Art. II, Sec. 1 Const. PR, LPRA, Tomo 1; la Ley Núm. 3, *supra*; la Ley Núm. 69, *supra*; la Ley Núm. 100, *supra.*; y la Ley Núm. 26-1992, según enmendada, conocida como *Ley para Reglamentar la Contratación de Empleados Temporeros a través de Compañías de Servicios Temporeros* (29 LPRA Sec. 1322 *et seq.*). A su vez, ordenó que mostraran causa por la cual no debía imponerles multas por la suma de $10,000 a cada querellada por el incumplimiento con la Ley Núm. 3, *supra*, al despedir a la señora Ramos Santos por razón de la merma en su producción por encontrarse en estado de embarazo; $10,000 a cada querellada por el incumplimiento con la Ley Núm. 69, *supra*, al no ofrecerle igual trato en el empleo por su estado de embarazo, y $10,000 a cada querellada por el incumplimiento con la Ley Núm. 100, *supra*, al despedir a la señora Ramos Santos por razón de sexo.

Corteva y ASP comparecieron con sus respectivos escritos. Corteva sostuvo que no procedían las multas. Indicó que a pesar de no ser el patrono de la señora Ramos Santiago (pues ella llevaba a cabo diversas funciones mediante contratos de asignaciones de empleo temporero) cumplió con sus obligaciones bajo las leyes laborales y buscó acomodar temporeramente a la querellante según las

restricciones del facultativo médico que limitaban el levantamiento de peso a diez (10) libras por razón de embarazo. Asimismo, ambas recurridas presentaron una *Moción conjunta de desestimación por falta de jurisdicción* el 5 de junio de 2024 en la que sostuvieron que la OPM carecía de jurisdicción para atender las reclamaciones de discrimen bajo estos estatutos laborales, pues la jurisdicción expresa y exclusiva fue conferida a los tribunales. Añadieron que las facultades de la OPM no debían interpretarse como que se le ha conferido jurisdicción generalizada para encauzar reclamaciones laborales contra patronos privados. Expresaron que la OPM no cuenta con el peritaje necesario para examinar reclamaciones de discrimen bajo estas leyes, pues no ha sido creada para atender la materia técnica respecto al derecho al empleo y su legislación protectora como tampoco alegaciones complejas de daños y perjuicios. Por lo tanto, sostuvieron que cualquier decisión que tome la OPM sería nula por falta de jurisdicción sobre la materia.

Examinada la postura de ambas partes, el 28 de junio de 2024, la OPM emitió una Orden y Resolución en la que declaró la solicitud de desestimación No Ha Lugar y expresó que "la controversia en el mismo se ciñe a los poderes de investigación, fiscalización e imposición de multas expresamente delegados" a la OPM.[4] Apéndice, pág. 34.

---

[4] La Orden y Resolución de 18 de octubre de 2024 fue enmendada el 23 de octubre de 2024.

En vista de esta determinación, las recurridas solicitaron reconsideración. Sostuvieron nuevamente que los remedios solicitados en la Querella administrativa incluían daños económicos, emocionales y angustias mentales. Además, expresaron que:

> No dudamos, ni mucho menos cuestionamos la facultad de la OPM y de la Honorable Oficial Examinadora en reclamar e imponer y cobrar multas administrativas respectivamente, al amparo del Art. 10(h) de la Ley Núm. 20-2001. Lo que sucede es que este Honorable Foro, para poder imponer una multa, [la OPM] tendría que determinar si en efecto hubo discrimen y si el alegado despido fue injustificado, y esa es la facultad que no tiene dentro de nuestro ordenamiento jurídico. Apéndice, pág. 38.

Añadieron que la OPM "no tiene conocimiento especializado o expertise en el área de la legislación laboral" por lo que se contravendría el propósito del procedimiento administrativo. Sostuvieron que es el Departamento del Trabajo y Recursos Humanos (DTRH) la agencia con más experiencia en la materia de legislación laboral y empleo, y aún así la Unidad Antidiscrimen no ofrece compensación bajo estas leyes.[5]

Por otro lado, la OPM sostuvo que la vulneración de los derechos de la mujer trabajadora puede estar sujeta a diversos tipos de sanciones, tanto en el ámbito civil o penal, como en el administrativo. En el ámbito administrativo, la OPM cuenta con facultades delegadas para ordenar acciones correctivas y para imponer multas administrativas. Sin embargo, reconoció no poder conceder

---

[5] Apéndice, págs. 41, 42, 44.

los remedios indemnizatorios a la empleada al amparo de estas leyes por lo que los procuraron ante el Tribunal de Primera Instancia.

La solicitud de reconsideración fue denegada. Inconforme, la parte recurrida presentó un recurso de Revisión Judicial. Mediante Sentencia de 18 de diciembre de 2024, notificada el 20 de diciembre de 2024, el Tribunal de Apelaciones revocó la Orden y Resolución enmendada de 24 de octubre de 2024 de la OPM. Concluyó que la OPM no tenía jurisdicción para conocer sobre las controversias que surjan en virtud de las leyes laborales.

En vista de esta determinación, la OPM acudió ante nos y señaló los errores siguientes:

1. Erró el Tribunal de Apelaciones al despojar a la OPM, contrario a las disposiciones de la Ley Núm. 20, *supra*, de sus poderes y obligaciones de fiscalizar, investigar y de imposición de multas a personas naturales o jurídicas por el incumplimiento de los estatutos que protegen a la mujer trabajadora en nuestra jurisdicción.

2. Erró el Tribunal de Apelaciones al determinar, de modo general, que la OPM carece de jurisdicción para "atender las controversias que surjan en virtud de la Ley Núm. 100, *supra*, la Ley Núm. 69, *supra*, y la Ley Núm. 3, *supra*". Así, se dejó de resolver los asuntos relacionados a la aplicabilidad, además, del artículo II, sección 1 de la Constitución del Estado Libre Asociado de Puerto Rico, y la Ley Núm. 26, *supra*.

3. Erró el Tribunal de Apelaciones al determinar, de modo general, que la OPM carecía de jurisdicción para "atender las controversias que surjan en virtud de la Ley Núm. 100, *supra*, la Ley Núm. 69, *supra*, y la Ley Núm. 3, *supra*", debido a "que dentro de sus deberes y funciones

no figura el poder de adjudicar reclamaciones bajo leyes antidiscrimen". La conclusión se basó en una premisa errónea, ya que el proceso ante la OPM no era para "adjudicar reclamaciones" bajo ningún estatuto laboral que proteja a la mujer trabajadora. El procedimiento es uno de fiscalización, investigación y multas, conforme a la Ley Núm. 20, *supra*, por el incumplimiento de estatutos laborales que impactan a la mujer trabajadora en Puerto Rico.

Contando con la comparecencia de ambas partes, y habiéndose expedido el recurso, estamos en posición de resolver.

## II

El estatuto orgánico o la ley habilitadora de una agencia es el mecanismo legal que le delega los poderes y facultades necesarios para actuar en conformidad con el propósito legislativo. *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR __ (2025); *D.A.Co. v. Fcia. San Martín*, 175 DPR 198, 203 (2009). De esta forma, la agencia solo tiene jurisdicción para realizar las funciones que le han sido encomendadas legislativamente y aquellas que surjan o sean indispensables para llevar a cabo su actividad o encomienda principal. *Depto. Justicia et al. v. Jiménez et al.*, 199 DPR 293, 309 (2017); *Amieiro González v. Pinnacle Real Estate*, 173 DPR 363, 371 (2008). No obstante, como cualquier otra ley, la ley habilitadora y los poderes delegados en ella deben interpretarse tomando en cuenta la intención legislativa, la política pública y el interés social que la inspira, y atribuyéndole un sentido que acierte el resultado pretendido

por el legislador. *Ayala Hernández v. Consejo Titulares*, 190 DPR 547, 561-562 (2014).

Los tribunales también hemos "reconocido mucha discreción a las agencias en la selección de las medidas que les ayuden a cumplir los objetivos de las leyes cuya administración e implantación se les ha delegado, siempre que actúen dentro del marco de su conocimiento especializado y de la ley". *Comisionado de Seguros v. PRIA*, 168 DPR 659, 667 (2006) (Énfasis omitido). Véase, además, *O.E.G. v. Román*, 159 DPR 401 (2003). Así, nuestro ordenamiento ha validado reiteradamente la imposición de multas administrativas como una de las facultades que ostentan las agencias. Particularmente, la Sec. 7.1 de la Ley Núm. 38-2017, según enmendada, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9701, (LPAU), reconoce que "[t]oda violación a las leyes que administran las agencias o a los reglamentos emitidos al amparo de las mismas podrá ser penalizada con multas administrativas que no excederán de cinco mil dólares ($5,000) por cada violación". De igual forma, mediante ley especial, la Asamblea Legislativa puede autorizar a las agencias a imponer multas por cantidades mayores. Íd.

A diferencia de otras facultades o remedios, este tipo de sanción civil permite que las agencias vindiquen los poderes que la Asamblea Legislativa les ha delegado cuando las personas o entidades que realizan actividades reguladas por la agencia se apartan del mandato de ley o de algún

reglamento, así como, para lograr los objetivos de la agencia. *Martínez v. D.A.Co.*, 163 DPR 594 (2004); *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 441 (1997). Es decir, tiene el propósito de evitar o disuadir las transgresiones a la ley o reglamento, así como de corregir una situación. *Comisionado v. Prime Life*, 162 DPR 334, 344 (2004). Véase, J.A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, Ed. SITUM, 2017, pág. 260. Por lo tanto, las multas administrativas se diferencian en propósito y consecuencia de aquellos remedios que buscan resarcir el daño causado a la parte por violaciones a las leyes.

No obstante, la imposición de multas está sujeta al procedimiento administrativo con sus correspondientes salvaguardas, así como a la posterior revisión judicial por los tribunales de justicia para asegurar que la agencia administrativa haya actuado acorde con el poder que se le ha delegado y de manera compatible con la política legislativa.[6] *Comisionado de Seguros v. PRIA*, supra, pág. 667. Véase, además, D. Fernández Quiñonez, *Derecho Administrativo*, 75 Rev. Jur. UPR 67 (2006). Especialmente, los tribunales examinarán que la "sanción administrativa esté basada en evidencia sustancial, no constituya una actuación *ultra*

---

[6] *Martínez v. D.A.Co.*, 163 DPR 594, 608 n.12 (2004). Véase, *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025), para una exposición detallada y reciente de la revisión judicial de las determinaciones administrativas. Por todo lo cual, las determinaciones de hecho de la agencia serán sostenidas de estar respaldadas por evidencia suficiente que surja del expediente administrativo y las conclusiones de derecho serán revisables por el tribunal en todos sus aspectos.

*vires* y tenga una relación razonable con los actos que se quieren prohibir". *O.E.G. v. Román*, *supra*, pág. 417.

Cabe señalar que, en ocasiones la Asamblea Legislativa opta por delegar facultades a más de un foro sobre una misma actividad regulada, creando de esta forma, un espacio regulatorio compartido o de coordinación interagencial. *D.A.Co. v. Fcia. San Martín*, *supra*. Véase, J. Freeman, *Agency Coordination in Shared Regulatory Space*, 125 Harv. L. Rev. 1131, 1145 (2012). Por ejemplo, la Sec. 6.4 de la LPAU, *supra*, contempla las gestiones conjuntas para que "las agencias p[ueda]n realizar inspecciones e investigaciones conjuntas con el objetivo de ampliar y facilitar su capacidad de fiscalizar el cumplimiento de las leyes especiales por el cual deben velar".[7] De igual forma, la Sec. 6.3 de la LPAU, *supra*, indica que "[l]os funcionarios de cualquier agencia administrativa p[uede]n radicar una querella en otra agencia, cuando hayan podido observar la violación de cualquier disposición de ley o reglamento que administra la otra agencia".[8]

Al crear estos espacios compartidos, la Asamblea Legislativa sopesa los beneficios, los costos y las complejidades de coordinación que puede conllevar la concesión de jurisdicción a varios foros. *Martínez v. Rosado*, 165 DPR 582 (2005). No obstante, cuando existe un conflicto jurisdiccional entre los foros administrativos que

---

[7] 3 LPRA sec. 9694.
[8] 3 LPRA sec. 9695.

no es posible armonizar, hemos extendido el principio de especialidad de las leyes al ámbito administrativo. Es decir, hemos reconocido que en esos supuestos una ley de carácter especial sobre una materia prevalece sobre otra de carácter general, por lo que debemos comparar "los poderes delegados a ambas agencias y sus respectivas funciones reguladoras y adjudicativas de la conducta en controversia".[9] *D.A.Co. v. Fcia. San Martín*, *supra*, págs. 212-213. En todo caso se debe velar por promover la coordinación interagencial y de que este espacio regulatorio compartido no fomente las sanciones múltiples o simultáneas. Íd. pág. 216.

Con este referente, examinemos la ley orgánica de la OPM para entender las facultades que le fueron concedidas a la OPM y a la Procuradora de la Mujer.

**III**

El Estado ha reconocido "que las mujeres siguen siendo objeto de importantes discriminaciones, opresiones y marginaciones que violan los principios de igualdad de derechos y el respeto de la dignidad humana y que dificultan su participación en la vida política, social, económica, cultural y civil". Art. 3 de la Ley Núm. 20-2001, *supra*, (1 LPRA sec. 311 nota). Por ello, estableció como política pública "garantizar el pleno desarrollo y respeto de los

---

[9] No obstante, en *De la Vega v. Sancho Bonet, Tes.,* 56 DPR 753, 756 (1940), reconocimos que una ley especial puede ser modificada por una general.

derechos humanos de las mujeres y el ejercicio y disfrute de sus libertades fundamentales". *Íd.*

Con la promulgación de la Ley Núm. 20-2001, *supra*, la Asamblea Legislativa detalló los avances estatutarios e institucionales que por décadas ha llevado a cabo en esa dirección, pero también reconoció la ausencia de mecanismos o instancias de fiscalización que obligaran al cumplimiento de las políticas públicas que garanticen los derechos humanos de las mujeres. *Íd.* Así, surge del Informe Conjunto de las Comisiones de Asuntos de la Mujer y de lo Jurídico de 2 de abril de 2001 que:

> la experiencia acumulada durante los pasados años en la Comisión para los Asuntos de la Mujer apuntaba desde hace ya una década a la necesidad de ampliar el esquema de acción de este organismo. La falta de facultades para intervenir y adjudicar controversias, para dictar órdenes vinculantes y acudir a los foros correspondientes para hacerlas valer, son algunas limitaciones en el accionar de esta agencia. Era pues, necesario crear un organismo autónomo, que retuviera las obligaciones otorgadas a la Comisión, pero concediéndole poderes adicionales y nuevas facilidades, tales como facultad para crear oficinas regionales o locales, para recibir, investigar y adjudicar querellas y para implantar la política pública sobre las mujeres con fuerza de ley. Informe de las Comisiones de Asuntos de la Mujer y de lo Jurídico del Senado de Puerto Rico, 26 Diario de Sesiones, 2 de abril de 2001, 14ta Asamblea Legislativa, 1ra Sesión Ordinaria, pág. 2117.

Asimismo, del historial legislativo resalta cómo la legislación pretende salvaguardar los derechos reconocidos a la mujer, incluyendo los derechos de la obrera puertorriqueña. Se expresa en el Informe de las Comisiones de Gobierno, de Asuntos de la Mujer y de Hacienda que:

Hemos visto cómo la medida ante nuestra consideración pretende viabilizar la coordinación de esfuerzos multisectoriales para salvaguardar los derechos que las leyes han reconocido a la mujer por su incuestionable condición biológica, emocional, social, en fin, multidimensional, de ser mujer: **derechos de la obrera puertorriqueña**, derecho a la co-administración en la sociedad legal de gananciales, ayuda a víctimas de violación y prohibición del discrimen por sexo, entre otros. (Énfasis suplido). Informe de las Comisiones de Gobierno, de Asuntos de la Mujer y de Hacienda de la Cámara de Representantes de Puerto Rico, Diario de Sesiones, 5 de abril de 2001, 14ta Asamblea Legislativa, 1ra Sesión Ordinaria, págs. 37 y 79.

Por ello, la Ley Núm. 20-2001, *supra*, creó el cargo de la Procuradora de las Mujeres y la OPM, la cual estructuró como un organismo con suficiente autonomía y facultades plenas de fiscalización, investigación, reglamentación y cuasijudiciales para proveer remedios y actuaciones correctivas de aquellas acciones u omisiones de agencias y entidades privadas que lesionen los derechos de las mujeres y las políticas existentes; autorizándola a imponer multas administrativas, otorgar compensaciones por daños, así como fijar penalidades.

Entre las facultades que la Ley Núm. 20-2001, *supra*, le delegó a la OPM, se encuentra la de acudir ante diversos foros, por sí o en representación de la parte interesada, para presentar las acciones que estime pertinentes para atender las violaciones contra la política pública establecida. Art. 9(c) Ley 20-2001 (1 LPRA sec. 316). Además, el estatuto faculta a la Procuradora de las Mujeres a:

> [a]tender, investigar, procesar y adjudicar querellas relacionadas con acciones y omisiones que lesionen los derechos de las mujeres, les niegan

los beneficios y las oportunidades a que tienen derecho, y afecten los programas de beneficio para las mujeres; y conceder los remedios pertinentes conform[e] a derecho, así como ordenar acciones correctivas a cualquier persona natural o jurídica, o cualquier agencia que niegue, o entorpezca, viole o perjudique los derechos y beneficios de las mujeres. 1 LPRA sec. 318(a).

También la autoriza a "adoptar las reglas y reglamentos que fueren necesarios para llevar a cabo los propósitos de esta ley". 1 LPRA Sec. 318(d). Con particular pertinencia al caso de autos, la Procuradora de las Mujeres puede: "[i]mponer y cobrar multas administrativas hasta un máximo de $10,000 por acciones u omisiones que lesionen los derechos de la mujer amparados por la Constitución y las leyes del Estado Libre Asociado de Puerto Rico, de conformidad y fijar la compensación por daños ocasionados, en los casos que así proceda". 1 LPRA Sec. 318(h).

En virtud de lo anterior, la OPM adoptó el Reglamento Núm. 8454 del 10 de marzo de 2014, conocido como *Reglamento sobre Procedimientos Investigativos y Adjudicativos de la Oficina de la Procuradora de las Mujeres*. Este Reglamento es aplicable a los trámites investigativos, adjudicativos, correctivos o de imposición de multa que lleve a cabo la OPM en el ejercicio de sus funciones investigativas y cuasi-judiciales.[10] Art. 1.3 del Reglamento Núm. 8454. No

---

[10] El término "querella" incluye la "acción iniciada por la OPM para hacer cumplir las leyes y reglamentos, compeler a la corrección de deficiencias e imponer multas". Art. 2(11) del Reglamento Núm. 8454 de 10 de marzo de 2014, conocido como *Reglamento sobre Procedimientos Investigativos y Adjudicativos de la Oficina de la Procuradora de las Mujeres*.

obstante, el Art. 3(5) del Reglamento Núm. 8454, reconoce que no se investigará aquel asunto que "está siendo considerado, adjudicado o investigado por otro foro al momento de presentarse la queja y a juicio de la Procuradora representaría una duplicidad de esfuerzos y recursos actuar sobre la misma".

Así, el procedimiento adjudicativo provisto en la ley reconoce y faculta a la Procuradora a llevar a cabo estas funciones frente a agencias y entidades privadas, incluyendo "a cualquier asociación, organización, instituto o persona natural o jurídica en la que **una mujer labore**". (Énfasis suplido), Art. 2(b) Ley 20-2001, (1 LPRA sec. 311). Por lo tanto, examinemos las leyes laborales que se relacionan al caso de autos.

## IV

La Sec. 1 del Art. II de la Constitución de Puerto Rico, LPRA, Tomo 1, establece que "[l]a dignidad del ser humano es inviolable" y prohíbe el discrimen por motivo de raza, color, sexo, nacimiento, origen o condición social, o ideas políticas o religiosas. Art. II, Sec. 1, Const. PR, LPRA, Tomo 1, ed. 2008, pág. 272. Siguiendo este mandato constitucional, nuestro ordenamiento legal ha extendido este principio de esencial igualdad humana al contexto laboral y por ello, se han promulgado leyes laborales que proscriben tajantemente todo discrimen por razón del sexo de una persona. *López Fantauzzi v. 100% Natural*, 181 DPR 92 (2011). De particular pertinencia al caso de autos, examinamos la

Ley Núm. 3, *supra*; la Ley Núm. 69, *supra* y la Ley Núm. 100, *supra*.[11] Estas leyes de naturaleza indemnizatoria forman parte "de un esquema legislativo dirigido a implantar la política pública del Estado contra el discrimen por razón de sexo, práctica ilegal e indeseable que atenta contra el principio constitucional anteriormente esbozado". *Suárez Ruiz v. Figueroa Colón*, 145 DPR 142, 149 y 153 (1998).

Así, desde 1942 el Estado ha procurado proteger a la mujer trabajadora de discrimen durante el estado grávido mediante la promulgación de la Ley Núm. 3, *supra*. Primero, reconoció la licencia por maternidad, pero posteriormente enmendó este estatuto para, entre otras cosas, reconocer la posible merma en la producción de una mujer embarazada y ofrecerle a la mujer obrera una mayor garantía contra el discrimen en el trabajo por razón de sexo. Por ello, protege su derecho de continuar en el empleo y a que no se le despida arbitrariamente.[12] *López Fantauzzi v. 100% Natural*, 181 DPR 92 (2011); *Soc. de Gananciales v. Centro Gráfico*, 144 DPR 952 (1998); *Rivera Áquila v. K-Mart de PR*, 123 DPR 599, 609 (1989). "De esta manera se evitan las consecuencias socio-económicas que durante el embarazo y después del mismo, podría conllevar tal despido". C. Zeno Santiago, *Tratado de Derecho del Trabajo*, 2003, pág. 271. Así, entre otras obligaciones y prohibiciones, proscribe el discrimen por

---

[11] Véase, *López Fantauzzi v. 100% Natural*, *supra*, para un recuento histórico de estas tres leyes.

[12] R. Delgado Zayas, *Apuntes para el Estudio de la Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño* ed. rev. 2021, pág. 214.

razón de embarazo y el despido sin justa causa de la mujer embarazada, mientras reconoce una acción por daños contra el patrono.[13] 29 LPRA sec. 469. R. Delgado Zayas, *Apuntes para el Estudio de la Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño* (2021), pág. 222.

Un aspecto de suma importancia es que la Ley Núm. 3, *supra,* establece una presunción de despido injustificado. Por lo tanto, establecido que la mujer ha sido despedida durante su embarazo, le corresponde al patrono probar que había justa causa para terminar la relación obrero-patronal y este no puede deberse al menor rendimiento en el empleo cuando es consecuencia directa del estado de embarazo. *Soc. de Gananciales v. Centro Gráfico*, *supra*; Rivera *Áquila v. K-Mart de PR*, *supra; Santiago v. Oriental Bank & Trust,* 157 DPR 250 (2002). Con este estatuto, el Estado provee una protección superior a la madre obrera en comparación a otras leyes laborales, ya sea por el peso de la prueba o la amplitud de la indemnización a concederse.[14] 29 LPRA sec. 469.

---

[13] *Meléndez v. Asoc. Hosp. del Maestro*, 156 DPR 828, 841-842 (2002)(La "Ley Núm. 3 dispone sanciones civiles distintas con respecto a los tres derechos esenciales que dicha ley establece".).

[14] Véase además, *Meléndez v. Asoc. Hosp. del Maestro*, 156 DPR 828 (2002); *Maldonado v. Russe*, 153 DPR 342, 348 (2001); *Soc. de Gananciales v. Centro Gráfico*, 144 DPR 952 (1998) ("La Ley Núm. 3, *supra*, incluye los daños sufridos por la trabajadora embarazada de forma ordinariamente más amplia que los remedios que concede la Ley Núm. 80, *supra*".); *Rivera Áquila v. K-Mart de PR*, 123 DPR 599, 609 (1989) ("Mediante la Ley Núm. 3, *supra*, se proveyó a la mujer obrera embarazada una protección mayor que la que ofrece la ley Núm. 100, *supra*. En una acción entablada bajo la Ley Núm. 3, *supra*, el patrono responde en daños si despide, sin justa causa, a una mujer embarazada. De otra parte, una reclamación bajo la Ley Núm. 100, *supra*, podría no proceder si, a pesar de no existir justa causa para el despido, el patrono prueba que éste no fue discriminatorio".); *Schneider v. Tropical Gas Company, Inc.*, 95 DPR 626 (1967). 29 LPRA sec. 469. R. Delgado Zayas, *op. cit.* pág. 222.

Por otro lado, la Ley Núm. 69, *supra,* prohíbe de forma específica el discrimen en el empleo por razón de sexo.[15] *Suárez Ruiz v. Figueroa Colón*, *supra*. Establece como práctica ilegal del empleo que el patrono "por razón de su sexo, suspenda, rehúse emplear o despida" a cualquier empleado. 29 LPRA sec. 1323(1). Esto "[i]ncluye, pero no se limita… a… embarazo, parto, o condiciones médicas relacionadas". 29 LPRA Sec. 1322(5). Por lo tanto, el patrono que infrinja estas prohibiciones se expone a penalidades civiles y criminales. *López Fantauzzi v. 100% Natural*, *supra*, pág. 125. Para ello, el Art. 18 de la Ley Núm. 69, *supra*, le confiere jurisdicción original a los tribunales en los casos que surgieren en virtud de esta.[16]

Por último, la Ley Núm. 100, *supra*, señala ciertas obligaciones para los patronos y les prohíbe de modo general discriminar en el reclutamiento o empleo de una persona, incluyendo por razón de sexo. Este comprende el discrimen por razón de embarazo como una de sus modalidades. 29 LPRA Sec. 147. *López Fantauzzi v. 100% Natural*, *supra*, pág. 120. En consecuencia, penaliza al patrono mediante la imposición de responsabilidad civil y criminal. *Soto y otros v. Sky Caterers*, 2025 TSPR 3, 215 DPR __ (2025); *Garib Bazaín v.*

---

[15] Por lo tanto, sus disposiciones prevalecen sobre las provistas en la Ley Núm. 100, *supra*, en cuanto a la prohibición del discrimen por razón de sexo en el empleo. *Pérez v. Mun. De Guaynabo*, 155 DPR 83, 88 (2001).

[16] Al igual que la Ley Núm. 100, *supra,* la Unidad Antidiscrimen tiene jurisdicción para investigar querellas de discrimen al amparo de este estatuto. *Díaz Santiago v. International Textiles*, 195 DPR 862 (2016). Véase además, Art. 3 del Reglamento General de la Unidad Antidiscrimen, Reglamento Núm. 6236 de 21 de noviembre de 2000.

*Hosp. Aux. Mutuo et al.*, 204 DPR 601(2020). Además, la ley otorga ciertas facultades al Secretario del Trabajo y Recursos Humanos con el objetivo de erradicar el discrimen en el empleo, quien en el ejercicio de estas facultades cuenta con un procedimiento informal ante la Unidad Antidiscrimen, entidad del DTRH encargada de investigar los reclamos de los empleados contra los patronos por alegado discrimen. Este procedimiento no es obligatorio para el empleado, por lo que puede acudir directamente a los tribunales para vindicar sus derechos. Tampoco "constituye un procedimiento adjudicativo, sino investigativo y conciliador dirigido a determinar si procede dar acceso a la reclamación por discrimen ante los tribunales".[17] *Meléndez Rivera v. CFSE*, 195 DPR 300, 307 (2016). Al respecto, hemos expresado que el Secretario del Departamento del Trabajo y Recursos Humanos "tampoco goza de la facultad para adjudicar propiamente los derechos y las obligaciones de los empleados y patronos implicados en casos de supuesto discrimen". Íd. Sin embargo, el Secretario sí tiene facultades reglamentarias y la autoridad para promover o intervenir en acciones bajo esta ley en representación de los trabajadores, empleados o aspirantes, así como otros remedios legales que sean necesarios para hacer cumplir la

---

[17] La presentación de una querella administrativa ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos tiene el efecto de interrumpir la acción judicial de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, conocida como *Ley Antidiscrimen de Puerto Rico* (29 LPRA Sec. 146 *et seq.*). Véase, *Díaz Santiago v. International Textiles, supra; Suárez Ruiz v. Figueroa Colón*, 145 DPR 142(1998).

ley. Véase además, Art. 5, Ley Núm. 100, *supra*, 29 LPRA sec. 149.

**V**

La OPM sostiene que fue creada "para fortalecer y hacer cumplir las políticas públicas que garanticen los derechos humanos de las mujeres, promuevan la equidad por género, eliminen toda discriminación hacia las mujeres, y garanticen la protección de sus derechos humanos".[18] Añade que, como parte de estos derechos se encuentran las protecciones laborales de las mujeres trabajadoras en nuestra jurisdicción. Además, indica que "los poderes delegados [de investigación, fiscalización e imposición de multas] no se limitan por la disponibilidad o existencia de cualquier proceso ante cualquier otra agencia, foro o tribunal en nuestra jurisdicción en reclamo de cualquier derecho o remedio reconocido por los estatutos".[19]

*A contrario sensu*, la parte recurrida sostiene que los tribunales ostentan la jurisdicción exclusiva para atender y adjudicar las reclamaciones laborales. Por ello, concluyen que la OPM usurpa esa jurisdicción al investigar, fiscalizar y multar por el alegado incumplimiento de estos estatutos. Añade que en todo caso sería el Departamento del Trabajo y Recursos Humanos la agencia administrativa con la pericia para atender asuntos sobre discrimen laboral de mujeres por

---

[18] Alegato, pág.9.
[19] Alegato, p.15.

su estado gestante, siendo los estatutos laborales las leyes especiales que rigen la materia.

En primer lugar, aclaramos que, en cuanto a los remedios contemplados en las leyes laborales discutidas, el Tribunal de Primera Instancia atiende la Querella Núm. GM2024CV00213. Esa Querella fue presentada previo al *Procedimiento Adjudicativo: Orden para Mostrar Causa* de 1 de abril de 2024. Asimismo, en ningún momento se ha cuestionado la jurisdicción de los tribunales para conceder tales remedios. Además, la OPM ha limitado el procedimiento administrativo a considerar sus facultades de fiscalización, investigación e imposición de multas con relación a las alegadas violaciones de las leyes que protegen el discrimen contra una mujer trabajadora embarazada, por lo que la OPM no ha pretendido conceder los remedios indemnizatorios de esas leyes.

Así las cosas, ambas partes reconocen que la Ley Núm. 20-2001, *supra*, delega a la OPM la capacidad de fiscalizar, investigar e imponer multas en cuanto a las lesiones de los derechos de la mujer amparados en la Constitución y las leyes. No obstante, las partes nos solicitan que examinemos si estas facultades se extienden al ámbito laboral y específicamente a las leyes que prohíben el discrimen por razón de sexo.

Surge del historial legislativo de la Ley Núm. 20-2001, *supra*, que la Asamblea Legislativa examinó y detalló los avances estatutarios e institucionales relacionados a los

derechos de las mujeres. Para ello contó con el insumo de distintas entidades, incluyendo el Departamento del Trabajo y Recursos Humanos. No obstante, y con total entendimiento de estas leyes, así como de los trámites disponibles, la Asamblea Legislativa contempló la creación de un nuevo ente con suficiente autonomía y facultades plenas de fiscalización, investigación, entre otras, para atender las acciones u omisiones que persisten lesionando los derechos de las mujeres, incluyendo aquellas en el ámbito laboral.[20] Por consiguiente, la Exposición de Motivos de la Ley Núm. 20-2001, *supra*, reconoció las distintas manifestaciones de discrimen hacia la mujer en el empleo, mientras que su texto expresamente incluyó como "entidades privadas" sujetas a sus poderes, "cualquier asociación, organización, instituto o persona natural o jurídica en la que una mujer labore". Por lo tanto, la Asamblea Legislativa extendió las facultades de la OPM a la esfera laboral, ámbito de tanto impacto en la vida de las mujeres.

La Asamblea Legislativa ha sido consciente del discrimen que enfrentan las mujeres y continúa promulgando leyes para atenderlo. Así, tan reciente como en el 2017, la Asamblea Legislativa promulgó la Ley Núm. 16-2017, conocida

---

[20] Del historial legislativo surge un repaso de los logros legislativos alcanzados durante el pasado siglo, así como su reconocimiento y apreciación de aquellas unidades de la Rama Ejecutiva que atienden de manera especializada los reclamos de las mujeres, destacando aquellas relacionadas con el discrimen en el empleo como la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos. Informe de las Comisiones de Asuntos de la Mujer y de lo Jurídico del Senado de Puerto Rico, 26 Diario de Sesiones, 2 de abril de 2001, 14ta Asamblea Legislativa, 1ra Sesión Ordinaria, págs. 2111-2112.

como *Ley de Igualdad Salarial de Puerto Rico* (29 LPRA sec. 251 *et seq.*). Esta ley "prohíbe el discrimen salarial por razón de sexo en trabajo comparable que requiera igual destreza, esfuerzo y responsabilidades bajo condiciones de trabajo similares". Exposición de Motivos, Ley Núm. 16-2017, (2017 [Parte 1]Leyes de Puerto Rico 597-604). Al hacerlo, se coordinaron las funciones de investigación, querellas, imposición de multas, así como la concesión de remedios, entre varios foros: el Departamento del Trabajo y Recursos Humanos, la OPM y los tribunales. En cuanto a la OPM, la Ley Núm. 16-2017, *supra*, reconoció que la Procuradora podrá tomar acciones al amparo de las facultades que le concede la Ley Núm. 20-2001, *supra*.[21] No obstante, para lograr que estos foros operen en coordinación, requirió al Secretario del Trabajo y Recursos Humanos en ciertas ocasiones atender las querellas administrativas en primera instancia y luego remitir el asunto a la atención de la OPM para que, entre otras cosas, esta pueda imponer las multas correspondientes. Esta especificación en la coordinación de facultades entre los distintos foros no surge expresamente de la Ley Núm. 3, *supra*, la Ley Núm. 69, *supra*, y la Ley Núm. 100, *supra*, ni sus enmiendas. Sin embargo, eso no implica que no exista un espacio interagencial compartido, como sostiene la parte recurrida.

---

[21] Art. 6 de la Ley Núm. 16-2017, conocida como *Ley de Igualdad Salarial de Puerto Rico* (29 LPRA sec. 256).

Como discutimos previamente, la Ley Núm. 3, *supra*, la Ley Núm. 69, *supra*, y la Ley Núm. 100, *supra*, prohíben el discrimen por razón de sexo en distintas manifestaciones y para ello conceden varios remedios que requieren del trámite judicial. No obstante, este trámite judicial tiene un propósito distinto al de la investigación e imposición de multas administrativas. Tiene una naturaleza indemnizatoria que busca resarcir el daño causado a la empleada. Por otro lado, la imposición de multas administrativas tiene como propósito evitar o disuadir las transgresiones a la ley o al reglamento, así como hacer valer los poderes que la Asamblea Legislativa le delegó a la agencia. Por lo tanto, no estamos ante un conflicto jurisdiccional entre ambos foros que requiera que las leyes sean armonizadas, *Pueblo v. López Pérez*, 106 DPR 584, 586 (1977), sino que estamos ante foros que tienen la encomienda de promover la política pública del Estado contra el discrimen por razón de sexo, pero con repercusiones distintas. En vista de esto, no nos convence el argumento de la parte recurrida de que la OPM "intenta adjudicarse y usurpar la jurisdicción de los tribunales sobre reclamaciones laborales".[22]

En este caso la empleada tenía varios foros a los que podía acudir para presentar su reclamo y acudió directamente a la OPM. Ninguna de las leyes expuestas limitaba las funciones de la OPM o le requería transferir el caso para

---

[22] Oposición al Alegato, pág. 1.

investigación o multa a otro foro administrativo. De esta manera -y de forma paralela a una acción civil ante los tribunales en la que se solicitan aquellos remedios que proveen las leyes- la OPM comenzó un procedimiento administrativo que pudiera culminar en la imposición de multas administrativas. Tampoco ningún otro foro administrativo ha considerado, adjudicado o investigado la posible violación que presenta la madre obrera, de forma tal que exista el riesgo de duplicidad de esfuerzos y recursos o de sanciones administrativas múltiples bajo la Ley Núm. 20-2001. Por ende, sostenemos la determinación de la OPM de que tiene jurisdicción para investigar, fiscalizar e imponer multas administrativas, pues fue conforme a derecho, y a su vez, promueve el propósito legislativo de asegurar el cumplimiento con los derechos de las mujeres.

**VI**

Por último, debemos considerar la conducta de la parte recurrida durante el trámite ante este foro. Específicamente, el 30 de abril de 2025 la parte recurrida presentó una *Moción de desestimación por acuerdo transaccional*. Sostuvo que tras la presentación del recurso ante nuestra consideración, las partes habían llegado a un Acuerdo Transaccional para el cual solo faltaba la firma. Además, anejó varias comunicaciones de correo electrónico entre los representantes de las partes sobre las gestiones dirigidas a transigir.

Poco después, la parte recurrida presentó una *Solicitud de descalificación de representación legal* el 19 de mayo de 2025. En esta señaló que existía un conflicto de intereses en cuanto a la aceptación del Acuerdo Transaccional. Esto pues, la representación legal de la señora Ramos Santiago ante el Tribunal de Primera Instancia participaba también en el procedimiento adjudicativo ante la OPM y era una condición esencial para el Acuerdo Transaccional el cierre de ambos trámites: judicial y administrativo. Por lo tanto, se ponía en riesgo el pago transaccional a favor de la señora Ramos Santiago.

La OPM se expresó en cuanto a ambas mociones y sostuvo que no existía Acuerdo vinculante escrito y firmado entre las partes. Añadió que la parte recurrida había tergiversado los hechos y producido documentos privados y confidenciales relacionados al caso y el trabajo de los representantes legales sin la autorización de la OPM, los cuales eran inadmisibles por ser parte de las gestiones dirigidas a transigir conforme a la Regla 408(A)(1) y (2) de las Reglas de Evidencia, 32 LPRA Ap. VI. Sostuvo que no existía conflicto de intereses ante la dualidad a la que está expresamente autorizada la OPM por ley para atender casos como el de autos, pero aún así la señora Ramos Santiago había expresado que no estaba de acuerdo con firmar el Acuerdo Transaccional. Por lo tanto, la OPM solicitó que se denegaran ambas solicitudes y se impusieran sanciones.

Por consiguiente, denegamos ambas solicitudes y procedemos a atender la imposición de sanciones con nuestra determinación del caso. La Regla 49 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, nos autoriza a imponer las sanciones económicas que estimemos apropiadas cuando alguna moción presentada es frívola o fue presentada para dilatar los procedimientos. Ante la inexistencia de un Acuerdo Transaccional y en vista de que las mociones presentadas por la parte recurrida ocuparon de forma innecesaria nuestros recursos y los de las demás partes, se le impone a la parte recurrida una sanción de mil dólares ($1,000).

## VII

Por los fundamentos expresados, revocamos la Sentencia recurrida e imponemos a la parte recurrida una sanción de mil dólares ($1,000) que deberá pagarse en sellos de rentas internas en la Secretaría de este Tribunal dentro del término de quince (15) días, contados a partir de la notificación de la sentencia.

Se dictará Sentencia de conformidad.


Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Oficina de la Procuradora de las Mujeres<br><br>    Peticionaria<br><br>        v.<br><br>Corteva Agriscience Puerto Rico, Inc., Advance Service Professional, Inc.<br><br>    Recurridos | CC-2025-0009 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 30 de diciembre de 2025.

Por los fundamentos expuestos en la Opinión que antecede, revocamos la Sentencia recurrida e imponemos a la parte recurrida una sanción de mil dólares ($1,000) que deberá pagarse en sellos de rentas internas en la Secretaría de este Tribunal dentro del término de quince (15) días, contados a partir de la notificación de la sentencia.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió Opinión conforme en parte y Disidente en parte a la que se une el Juez Asociado señor Colón Pérez.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oficina de la Procuradora de
las Mujeres

      Peticionario

        v.                CC-2025-0009

Corteva Agriscience Puerto
Rico, Inc.; Advance Services
Professional, Inc.

      Recurridos

Opinión de conformidad en parte y disidente en parte emitida por la Jueza Presidenta ORONOZ RODRÍGUEZ a la que se unió el Juez Asociado señor Colón Pérez.

En San Juan, Puerto Rico, a 30 de diciembre de 2025.

Estoy conforme con la determinación a la que llegamos hoy porque los derechos de la mujer trabajadora, en este caso el trabajo remunerado, requieren de una visión amplia sobre las desigualdades estructurales que aún le impiden a esta su desarrollo pleno en los espacios públicos laborales. No obstante, disiento en parte pues entiendo que no procedía la imposición de la sanción adicional de mil dólares ($1,000) puesto que del expediente no surge que los recurridos actuaran de manera frívola o con ánimo de dilatar los procedimientos. Empero, enfatizo que la adjudicación en nuestros tribunales que viabiliza la comprensión de las barreras que impiden a la mujer

alcanzar la igualdad y facilita la protección de su dignidad en los espacios de trabajo, es esencial para atajar cualquier condición de discrimen y brindarle a esta unos remedios prácticos y accesibles para la vindicación de sus derechos.

Puesto que nos encontramos ante un asunto que atañe la médula del discrimen por razón de sexo: la creencia de que el trato discriminatorio hacia las mujeres invade todos los aspectos de su vida, se reconoce la jurisdicción de la Oficina de la Procuradora de las Mujeres (OPM) para investigar y sancionar ciertas conductas que también pueden ser atendidos, con otro enfoque y con otros remedios, ante otros foros adjudicativos. En este caso, los patronos Corteva Agriscience Puerto Rico, Inc. y Advance Services Professional, Inc., arguyen que la OPM no tiene la jurisdicción ni el peritaje que se requieren para atender asuntos laborales, pues entienden que únicamente le corresponde atenerse a la "situación de las mujeres",[1] allá en la abstracción. Sin embargo, los derechos que salvaguardan las condiciones de la mujer obrera son "situaciones de las mujeres" que la Procuradora de la Mujer, dentro del marco de acción que le fue conferida, debe atender si pretende cumplir con la misión y la visión que inspiró su creación.

Los asuntos de las mujeres no son aislados ni ocurren en el vacío, sino que guardan una relación estrecha con las distintas intersecciones que, naturalmente, afectan sus vidas.

---

[1] Apéndice, pág. 67.

Resalto que, en ese sentido, no se puede y no se debe hablar de los asuntos de las mujeres sin también hablar de empleo, educación, política, crianza o cuidados, recreación y deportes, salud, finanzas, ocio y, por supuesto, de justicia. El principio de la no discriminación implica derribar las barreras que pretenden negar o limitar el acceso de la mujer a ciertos espacios. Por las razones que expongo, coincido con la decisión que tomamos hoy al sostener que la defensa de las **obreras puertorriqueñas** también es parte inherente de la misión y del propósito de la OPM.[2]

El Estado creó la OPM como un medio para canalizar su intervención en favor de la protección de los derechos de las mujeres. Al estudiar el historial legislativo, tal y como consta en la Opinión del Tribunal, es inescapable concluir que se facultó a la OPM a intervenir en todos los ámbitos que mencionamos antes, lo que incluye hacer valer los derechos de las mujeres en la esfera laboral —específicamente, como en el caso ante nos— cuando se busca vindicar el derecho de una mujer trabajadora quien alega haber sido discriminada por motivo de su embarazo. Por un lado, a la OPM se le confirió la facultad para intervenir con "cualquier asociación, instituto, organización o persona natural o jurídica"[3] que incumpla con la política pública antidiscriminatoria del Estado por razón de sexo o género. Por el otro, en aras de promover la justicia, los tribunales tenemos el deber de

---

[2] Opinión, págs. 13-14.
[3] Art. 2(b) de la Ley 20-2001, *Ley de la Oficina de la Procuradora de las Mujeres*, 1 LPRA sec. 311.

reafirmar las salvaguardas que amparan a las clases protegidas, y de viabilizar que las instituciones puedan ejercer sus facultades para defenderlas a través de los mecanismos adecuados para ello.

En lo pertinente, las mujeres actualmente constituyen aproximadamente el 38 por ciento de la fuerza laboral del país, y apenas perciben ochenta y dos centavos ($0.82) por cada dólar ($1.00) que gana un hombre.[4] Este número, además, representa un descenso de 10% desde la última vez que se calculó en 2019.[5] En parte, esto responde al monopolio obligado sobre el trabajo reproductivo o doméstico,[6] sumado a la labor emocional que nuestra sociedad le impone a las mujeres.[7] Este trabajo se entiende como intrínseco a la capacidad de crear vida, pero ese proceso —el embarazo— carece con frecuencia de las protecciones necesarias en el ámbito laboral para permitirles a las mujeres cumplir con los múltiples roles que asumen con valentía.

Las protecciones laborales a las mujeres embarazadas responden al llamado de la igual protección ante la ley y a

---

[4] Puerto Rico Department of Labor & Human Resources, *Measuring the Gender Wage Gap in Puerto Rico*, 42 (2024).

[5] Íd.

[6] Se define como el conjunto de trabajo necesario para la reproducción biológica y la producción social y económica. Véase I. Larrañaga, *El trabajo reproductivo o doméstico*, La Salud y el sistema sanitario desde la perspectiva de género y clase social, 18 Gac. Sanit. 31, 31-32 (2004).

[7] Se define como el conjunto de obligaciones necesarias para la gestión y enseñanza de las habilidades socioemocionales durante la crianza. Véase K. Sánchez, R. Brito, M. Campas, *Habilidades y corresponsabilidad parental: una perspectiva sociojurídica en el contexto mexicano*, 40 Vox Juris 30, 38 (2022); Véase además G. Reiman, J. Rodecap, *The Moments No One Sees: Invisible Labor and Emotional Weight in Women's Legal Work*, 94 Kan. B.J. 14, 15 (2025): ("[E]motional labor in caregiving roles is so deeply gendered that it often goes unnamed.")

la prohibición contra el discrimen por razón de sexo. Robustecer estas protecciones resultaría en una sociedad en la que las madres puedan, con más apoyo, ser madres trabajadoras con vidas plenas, sin estar sujetas a las exigencias machistas que se le imponen socialmente y que rechazan dos verdades fundamentales: que una sociedad sin trabajadoras no produce y que una sociedad sin madres no sobrevive.

Este Tribunal ha reiterado que la Constitución afirma la prohibición del discrimen por razón de sexo, pero deshacer el discrimen exige que las instituciones activamente promuevan la igualdad y la equidad con acciones concretas. Un examen somero de la historia de Puerto Rico confirma que los derechos de las mujeres han progresado lentamente y que han sido objeto de cuestionamientos y ataques constantes. De hecho, los logros alcanzados en nombre del principio de la igualdad no han sido ni lineales ni progresivos, expandiéndose y contrayéndose con una frecuencia sorpresiva. Por ello, debemos recordar que el discrimen no ocurre en un espacio ficticio o despegado de la realidad, sino que se vive en la piel.

Redundaría en un fracaso de la justicia crear un organismo dedicado a proteger los derechos de las mujeres sin resaltar lo imperativa que resulta su facultad para supervisar y hacer valer la igualdad de derechos en el ámbito laboral, el cual históricamente ha sido uno de los escenarios de algunas de las peores desigualdades motivadas por sexo y género. Por tanto, estoy conforme con el proceder de este Tribunal hoy y

aspiro a que, en el futuro, procuremos atajar el discrimen por razón de sexo y de género y fortalezcamos nuestras instituciones en beneficio de las mujeres y otras poblaciones vulnerables en nuestra sociedad puertorriqueña.

Maite D. Oronoz Rodríguez
Jueza Presidenta