Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>vs.<br><br>Argenis Carrión Santos<br><br>Peticionario | TA2026CE00278 | ***CERTIORARI***<br>procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: DVI2025G0048 DLA2025G0312 AL 0313<br><br>Sobre: Art. 93 (e) C.P. (1er grado); Art. 6.06 Ley 168 (2 cargos) |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de marzo de 2026.

Comparece el señor Argenis Carrión Santos (Sr. Carrión Santos o peticionario), quien nos solicita la revocación de la Resolución emitida el 4 de febrero de 2026[1], por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario). Mediante el referido dictamen, el foro primario declaró No Ha Lugar la Moción sobre Planteamiento de Inconstitucionalidad en la Moción de Desestimación al Amparo de la Regla 64P presentada por el peticionario.

Examinada la solicitud de autos, la totalidad del expediente y el derecho aplicable, expedimos el auto de *Certiorari,* y confirmamos la Resolución recurrida, por los fundamentos que expondremos a continuación.

**I.**

Por hechos ocurridos el 24 de julio de 2025, el Ministerio Público radicó una serie de denuncias en contra del Sr. Carrión Santos, por violación al Art. 93(e)(6) del Código Penal, *infra*, y el

---

[1] Notificada en igual fecha.

Art. 6.06 de la Ley de Armas, 25 LPRA sec. 466e. Acontecidos los procedimientos que rigen nuestro sistema penal, el foro primario celebró la vista preliminar al amparo de la Regla 23 de Procedimiento Civil, 34 LPRA Ap. II, R. 23. Evaluada la prueba presentada en esta etapa, el TPI encontró causa probable para acusar al peticionario por los delitos según denunciados. Consecuentemente, expidió la acusación a tenor con el Art. 93(e)(6) del Código Penal, *infra*:

> *El referido acusado, Argenis Carrión Santos, allá en o para el día 24 de julio de 2025 a las 3:55 a.m., en el Lote C, Calle Orquídea Esquina Gardenia, Sector Ranchos Nativos, Barrio Candelaria, Vega Alta, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Bayamón, ilegal, con intención criminal, a propósito y/o conocimiento le ocasionó la muerte a Keyshla Marie Rivera Ocasio, mujer con la que el victimario está casado, procrearon un hijo de un (1) año y seis meses e intentaba restablecer una relación sentimental, conyugal, de pareja, amistad, convivencia, intimidad, afectiva, de noviazgo o de confianza, o cualquier otra relación de hecho. Consistente en [sic] que el aquí imputado utilizó un cuchillo con cabo marrón oscuro y clavos color aluminio metal para darle una puñalada en el centro del pecho (entre los dos senos) y un cuchillo marrón oscuro y marrón claro para darle una puñalada en la sien derecha, a su esposa y madre de su hijo de un (1) año y seis (6) meses, Keishla Marie Rivera Ocasio, causándole la muerte.*[2]

Luego, el 18 de diciembre de 2026, el Sr. Carrión Santos presentó un escrito intitulado Moción Solicitando [sic] de Desestimación al Amparo de la Regla 64P de Procedimiento Criminal. En esencia, argumentó que el Art. 93(e)(6) del Código Penal, *infra*, es inconstitucional, puesto que adolece de vaguedad. A la luz del precitado texto, señaló que no se puede determinar cuál es la conducta prohibida, lo cual quebranta el debido proceso de ley que le asiste. Asimismo, arguyó que el referido delito incide en las garantías constitucionales que prohíben el discrimen por razón de sexo. A su vez, adujo que la prueba presentada en la vista preliminar estableció que el peticionario incurrió en

---

[2] Apéndice del recurso de *Certiorari,* Anejo V, a la pág. 1.

asesinado atenuado, mas no en el delito de feminicidio . En vista de lo anterior, peticionó la desestimación de la acusación, toda vez que razonó que esta no se alcanzó conforme con el arreglo de ley y derecho.

Por su parte, el 7 de enero de 2026, el Ministerio Público interpuso un Escrito de Oposición a Moción Solicitando Desestimación al Amparo de la Regla 64P de Procedimiento Criminal. En síntesis, sostuvo que el Art. 93(e)(6) del Código Penal, *infra*, no adolece de vaguedad, pues una persona promedio puede discernir cuál es el acto tipificado en dicho artículo. Por otro lado, explicó que el Sr. Carrión Santos carece de legitimación activa para levantar los argumentos concernientes a la violación de igual protección de las leyes. Sobre este particular, indicó que el peticionario está impedido de invocar los derechos de las víctimas masculinas. No obstante, en los méritos de dicha controversia, precisó que el delito del feminicidio instaurado en el Art. 93(e)(6) del Código Penal, *infra*, supera el estándar constitucional. Por consiguiente, peticionó la denegatoria de la solicitud de desestimación y se continuara al proceso de ventilación del juicio.

Luego de examinar sus respectivos argumentos, el 20 de enero de 2026, el TPI emitió una Resolución[3], en la cual declaró No Ha Lugar la desestimación. Oportunamente, el Sr. Carrión Santos sometió una Moción sobre Planteamiento de Inconstitucionalidad en la Moción de Desestimación al Amparo de la Regla 64P. Sostuvo que el foro primario no se pronunció respecto a los argumentos constitucionales levantados en torno al delito de feminicidio, por lo que, solicitó que se notificara un dictamen que atendiese tales señalamientos.

---

[3] Notificada en igual fecha.

Examinado sus planteamientos, el 4 de febrero de 2026, el TPI emitió una Resolución[4], mediante la cual reiteró sostener la determinación denegatoria en cuanto a la petición de desestimación promovida por el peticionario, a tenor con la Regla 64(p) de Procedimiento Criminal, *infra*. Resolvió que atender la constitucionalidad del Art. 93(e)(6) del Código Penal, *infra*, constituye un asunto inmaterial, máxime cuando al acusado se le procuraron todas las garantías procesales que le asisten. Precisó, además, que el Ministerio Público presentó una *scintilla* de evidencia que justifica la continuación del proceso criminal.

Inconforme, el 6 de marzo de 2025, el Sr. Carrión Santos recurrió ante este Tribunal de Apelaciones mediante una Petición de *Certiorari*, en la cual esbozó los siguientes señalamientos de error:

> *Erró el Honorable Tribunal de Primera Instancia al declarar sin lugar la solicitud de desestimación presentada por la defensa de Argenis Carrión Santos, a pesar que el Artículo 93 (E)(6) adolece de vaguedad y viola la igual protección de las leyes según consagrado en el Artículo II Sección 7 de la Constitución del Estado Libre Asociado de Puerto Rico.*

Presentado su recurso, el 9 de marzo de 2026, este foro intermedio apelativo dictó una Resolución, en la cual concedió a la parte recurrida un término a vencer el 19 de marzo de 2026 para someter su posición. De conformidad con nuestro decreto, el Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General, radicó su escrito intitulado Alegato de El Pueblo de Puerto Rico.

Con el beneficio de la comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

---

[4] Notificada en igual fecha.

**II.**

**A.**

En nuestro esquema apelativo, el auto *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una determinación de un tribunal inferior. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994, 1004 (2021). *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020). Véase, también, Art. 670 del Código de Enjuiciamiento Civil de 1933 de la Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva de este vehículo procesal se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 209 (2023); *IG Builders et al.* v. *BBVAPR,* 185 DPR 307, 338 (2012).

Así que, a diferencia del recurso de apelación, el tribunal revisor puede expedir el auto de *Certiorari* de manera discrecional. *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020); *Pueblo v. Díaz De León*, 176 DPR 913, 917-918 (2009). No obstante, en aras de orientar la discreción judicial, la Regla 40 del Tribunal de Apelaciones, del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), delimita las circunstancias para considerar su expedición:

> A. *Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.*
>
> B. *Si la situación de hechos planteada es la más indicada para analizar el problema.*
>
> C. *Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.*
>
> D. *Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.*

*E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*

*F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*

*G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*

Obsérvese que, tales criterios permiten que los tribunales apelativos revisores ejerzan prudentemente su discreción al decidir si atiende en los méritos el recurso. *Pueblo v. Rivera Montalvo, supra,* a la pág. 373. A su vez, procuran que el análisis revisorio no se efectúe en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra,* a la pág. 176.

Al examinar si procede o no la expedición de este recurso, nos compete ser cuidadosos y conscientes de la naturaleza de la controversia ante nuestra consideración en tal ejercicio discrecional. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 849 (2023). Por consiguiente, no debemos intervenir en las determinaciones de hechos del foro primario, salvo se pruebe prejuicio, parcialidad o craso abuso de discreción o error manifiesto. *Citibank et al. v. ACBI et al.,* 200 DPR 724, 736 (2018). Véase, además, *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013). Esta normativa responde a que "el *certiorari* sigue siendo un recurso discrecional y los tribunales debemos utilizarlo con cautela y por razones de peso". *Pueblo v. Díaz De León, supra,* a la pág. 918.

**B.**

Es norma reiterada que, la doctrina de justiciabilidad impone el deber de evaluar si la parte reclamante tiene legitimación activa para incoar cierta acción legal. *Hernández, Santa v. Srio. de Hacienda,* 208 DPR 727, 738-739 (2022); *Hernández Torres v. Gobernador,* 129 DPR 824, 835 (1992). En esencia, la legitimación activa es la capacidad requerida a la parte

promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficacia actos procesales, y de esta forma, obtener una sentencia vinculante. *Hernández, Santa v. Srio. de Hacienda, supra,* a la pág. 739; *Ramos, Méndez v. García García,* 203 DPR 379, 394 (2019).

En virtud de esta doctrina se procura demostrar que "la parte demandante tiene un interés en el pleito de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia". *Sánchez et al. v. Srio. de Justicia et al.*, 157 DPR 360, 371 (2002); *Hernández Agosto v. Romero Barceló,* 112 DPR 407, 413 (1982). Así pues, una parte reclamante tiene legitimación activa si cumple con los siguientes criterios establecidos por el Tribunal Supremo de Puerto Rico:

> *[L]a parte que solicita un remedio judicial debe demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción surge al palio de la Constitución o de una ley. Santa v. Srio. de Hacienda, supra,* a la pág. 739; *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68 (2017).

De conformidad con tales consideraciones, los tribunales delimitan su propia jurisdicción y evitan lanzarse a resolver cuestiones hipotéticas o planteadas dentro de un contexto inadecuado. *Hernández, Santa v. Srio. de Hacienda, supra,* a la pág. 739; *Hernández Torres v. Hernández Colón et al.*, 131 DPR 593, 598 (1992).

## C.

La Carta de Derechos de la Constitución de Puerto Rico establece que la dignidad del ser humano es inviolable, por lo que está prohibido el discrimen por motivo de raza, color, sexo, nacimiento, origen o condición social, o ideas políticas o religiosas. Art. II, Sec. 1, Const. PR, LPRA, Tomo 1. Véase, además, *OPM v.*

*Corteva y otros*, 2025 TSPR 146, 217 DPR ___ (2025). En armonía con lo anterior, nuestra Magna Carta garantiza la igual protección de las leyes a todas las personas. Art. II, Sec. 7, Const. PR, Tomo I. Ahora bien, esta protección "no exige que siempre se dé un trato igual a todos los ciudadanos, sino que prohíbe un trato desigual e injustificado". *Comisionado Electoral v. Pres. CEE et al.*, 2025 TSPR 54, 215 DPR ___ (2025) (citando a *Domínguez Castro et al. v. E.L.A. I*, 178 DPR 1, 71 (2010)).

Así, pues, "el fundamento de este precepto surge de la concepción básica de que para gobernar una sociedad tan compleja y variada, en la cual existen distintos intereses individuales y grupales, y diversas relaciones sociales, es necesario establecer clasificaciones". *Domínguez Castro et al. v. E.L.A. I, supra*, a la pág. 70; *López v. E.L.A.*, 165 DPR 280, 297 (2005). Por tal razón, la existencia de una clasificación no implica, *per se*, que hay una violación a dicho principio constitucional. *Rodríguez Rodríguez v. E.L.A.*, 130 DPR 562, 581 (1992); *P.S.P., P.P.D., P.I.P. v. Romero Barceló*, 110 DPR 248, 260 (1980). Lo anterior responde, además, a que el Estado tiene la facultad de hacer clasificaciones entre las personas, siempre y cuando la categorización sea razonable y con miras a la consecución de un interés público legítimo. *Domínguez Castro et al. v. E.L.A. I, supra*, a la pág. 71; *Zachry International v. Tribunal Superior*, 104 DPR 267 (1975).

Ante tales contextos, "la tarea de los foros judiciales no es impedir la creación de estas clasificaciones, sino de cerciorarse que no creen desigualdades indebidas o irrazonables". *Comisionado Electoral v. Pres. CEE et al., supra*, (citando a R. Serrano Geyls, *Derecho constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. U.I.A.P.R. 1997, Vol. II, a la pág. 1081). Por ello, en estos casos, "los tribunales deben recurrir a uno de dos tipos de

escrutinios: el escrutinio tradicional o el escrutinio estricto". *Comisionado Electoral v. Pres. CEE et al., supra.* Véase, también, *Zachry International v. Tribunal Superior, supra,* a la pág. 277.

Respecto al escrutinio tradicional, también conocido como escrutinio de nexo racional, nuestro Alto Foro ha explicado que "es empleado en casos donde se impugne reglamentación de tipo económica y social. Al aplicarlo, se presume la constitucionalidad de la clasificación". *Domínguez Castro et al. v. E.L.A. I, supra,* a la pág. 72; *Rodríguez Rodríguez v. E.L.A., supra,* a la pág. 582. Bajo este examen, como norma general, se sostendrá la constitucionalidad de la legislación si el Estado demuestra lo siguiente:

> *Bajo el escrutinio tradicional o de nexo racional, una clasificación legislativa no debe ser declarada inválida o inconstitucional a menos que sea claramente arbitraria; esto es, que no exista un interés legítimo del Estado o que no pueda establecerse nexo racional alguno entre la clasificación y un interés estatal. Aplicando este criterio se ha resuelto que es constitucional una ley siempre que pueda concebirse razonablemente una situación de hechos que justifique la clasificación, teniendo el peso de la prueba aquel que alega la inconstitucionalidad de la legislación en controversia. Rodríguez Rodríguez v. E.L.A., supra, a la pág. 582; Zachry International v. Tribunal Superior, supra, a la pág. 277.*

En cambio, el Tribunal Supremo de Puerto Rico ha precisado que aplicará el escrutinio estricto para examinar aquellas clasificaciones sospechosas o cuando la clasificación afecta un derecho fundamental. *Domínguez Castro et al. v. E.L.A. I, supra,* a la pág. 72; *San Miguel Lorenzana v. E.L.A.,* 134 DPR 405, 425 (1993). Es decir, para justificar la utilización del escrutinio riguroso o estricto, "el tribunal tiene que identificar si la clasificación hecha afecta algún derecho fundamental de la persona o si establece alguna clasificación sospechosa que no guarde relación con la habilidad o aptitud de las personas afectadas por la clasificación". *Berberena v. Echegoyen,* 128 DPR

864, 879 (1991); *Zachry International v. Tribunal Superior,* supra, a las págs. 276-277. Entre las categorías inherentemente sospechosas se encuentran las siguientes clasificaciones, a saber: la raza, el color, el sexo, el nacimiento, el origen o la condición social, las ideas políticas o religiosas, y la nacionalidad. *López v. E.L.A., supra*, a la pág. 308; *Rodríguez Rodríguez v. E.L.A.*, *supra*, a la pág. 582. En cuanto a los derechos fundamentales, se consideran categorías sospechosas aquellas que afecten el derecho al voto, la libertad de culto, la libertad de expresión, la vida, la protección de ley contra ataques abusivos a la honra y la intimidad. *Domínguez Castro et al. v. E.L.A. I, supra,* a la pág. 73; *San Miguel Lorenzana v. E.L.A., supra,* a la pág. 425.

Si el tribunal identifica una ley que afecta una categoría sospechosa, "la legislación se presume inconstitucional y le corresponde al Estado probar la existencia de un interés apremiante que las justifique". *López v. E.L.A.*, 165 DPR 280, 299 (2005). Bajo este escenario, deberá probar los siguientes elementos, a la luz del escrutinio estricto: (1) que persigue un interés público apremiante, de superior jerarquía; (2) que la clasificación discriminatoria es necesaria para alcanzar ese fin; y (3) que no existen medios menos onerosos para hacerlo. *Comisionado Electoral v. Pres. CEE et al., supra.* Véase, también, *Domínguez Castro et al. v. E.L.A. I, supra,* a las págs. 73-74. Ahora bien, si el Estado no cumple con la carga probatoria, entonces la legislación se declarará inconstitucional por incidir en la dignidad humana y la igual protección a las leyes. Véase, *Com. de la Mujer v. Srio. de Justicia,* 109 DPR 715, 733 (1980).

### D.

El Art. 8 del Código Penal, Ley Núm. 146-2012, 33 LPRA sec. 5008, según enmendado, preceptúa el principio de responsabilidad penal:

*Nadie podrá ser sancionado por un hecho previsto en una ley penal si no lo ha realizado según las formas de culpabilidad provistas en este Código.*

*La exigencia de responsabilidad penal se fundamenta en el análisis de la gravedad objetiva del daño causado y el grado de culpabilidad aparejado por la conducta antijurídica del autor.*

Según la interpretación jurisprudencial, las garantías reconocidas en el precitado texto legislativo tienen el propósito de advertirles a los ciudadanos sobre las conductas constitutivas de delitos, según tipificadas por el Estado, y a su vez, protegen al individuo de actuaciones arbitrarias por parte de los jueces. *Pueblo v. Ruiz,* 159 DPR 194, 235 (2003). En consonancia con lo anterior, es menester explicar que, "[l]a doctrina de vaguedad es un corolario del debido proceso de ley que prohíbe la aplicación contra una persona de una ley o un reglamento cuyos términos no revelen clara y adecuadamente cuál es la conducta prohibida". *Pueblo v. APS Healthcare of P.R.,* 175 DPR 368, 377-378 (2009); *Pueblo v. Hernández Colón,* 118 DPR 891, 901 (1987). Así, pues, en virtud del Art. 8 del Código Penal, *supra,* se prohíben los estatutos vagos. *Pueblo v. Ruiz, supra,* a la pág. 235.

La doctrina de vaguedad aplica a estatutos de carácter punitivo que prohíben o penalizan. *Danosa Caribbean v. Neg. Asist. Cont.,* 185 DPR 1008, 1029 (2012); *Pacheco Fraticelli v. Cintrón Antonsanti,* 122 DPR 229, 239-240 (1988). Una ley adolece de vaguedad si sus prohibiciones no están claramente definidas, es decir, si "una persona de inteligencia promedio no queda debidamente advertida del acto u omisión que el estatuto pretende prohibir, lo que se presta para una aplicación arbitraria y discriminatoria". *OCS v. Point Guard Ins.,* 205 DPR 1005, 1031 (2020); *Danosa Caribbean v. Neg. Asist. Contr., supra,* a la pág. 1029.

En estas circunstancias, la legislación es nula porque sus prohibiciones no están claramente definidas *O.E.G. v. Cordero, Rivera*, 154 DPR 827, 835 (2001); *Pacheco Fraticelli v. Cintrón Antonsanti, supra*, a la pág. 239. Tal situación coloca a una persona en un estado de indefensión, lo cual incide directamente en sus garantías procesales. Sobre este particular, el Tribunal Supremo de Puerto Rico ha precisado que una legislación adolece de vaguedad si: (1) una persona de inteligencia promedio no queda debidamente advertida del acto u omisión que el estatuto pretende prohibir y penalizar; (2) se presta a la aplicación arbitraria y discriminatoria; e (3) interfiere con el ejercicio de derechos fundamentales garantizados por la Constitución. *Pueblo v. APS Healthcare of P.R., supra*, a la pág. 378; *Pacheco Fraticelli v. Cintrón Antonsanti, supra*, a las págs. 239-240.

En esa línea, el profesor Chiesa Aponte explica que la vaguedad surge también cuando existen leyes que criminalizan conducta con lenguaje excesivamente amplio, según se discute a continuación:

> *También son vagas las leyes que criminalizan conducta mediante lenguaje amplio. Una ley es inconstitucional bajo esta doctrina cuando es tan amplia que los jueces quedan libres de decidir cuál es la conducta prohibida sin referencia a un estándar jurídico determinado. Este tipo de estatuto es contrario al debido proceso porque su gran alcance y amplitud le[s] confiere a los agentes de orden público una discreción ilimitada al determinar si una persona ha cometido la conducta prohibida. Esta, a su vez, se presta para una aplicación arbitraria y discriminatoria de la ley.* L.E. Chiesa Aponte, <u>Derecho Penal Sustantivo</u>: 2da ed., Publicaciones JTS, 2013, a la pág. 14.

Ante tales instancias, el estatuto no le provee a los funcionarios, encargados en poner en vigor la ley, unas guías razonables, por lo que, se presta para una aplicación arbitraria y discriminatoria, que interfiere con los derechos fundamentales garantizados por la Constitución. *Pueblo v. García Colon I*, 182 DPR 129, 149 (2011); *Boys and Girls Club v. Srio. de Hacienda*, 179

DPR 746, 755 (2010); *Pueblo v. APS Healthcare of P.R., supra,* a la pág. 378. Ello, pues, "las leyes imprecisas pueden engañar al inocente al no proveer un aviso adecuado". *O.E.G. v. Cordero, Rivera, supra,* a las págs. 835-836.

Ahora bien, "el hecho de que una disposición requiera interpretación no significa que es vaga, puesto que no debe caerse en la superficialidad de creer que una ley penal es nula por defecto de vaguedad debido a que requiera interpretación". *Pueblo v. APS Healthcare of P.R., supra,* a la pág. 388; *Pueblo v. Tribnl. Superior,* 81 DPR 763, 788 (1960). Véanse, además, *Pueblo v. Tribunal Superior,* 98 DPR 750, 751 (1970); *Vives Vázquez v. Tribunal Superior,* 101 DPR 139, 145 (1973). Por lo que, "[a]l interpretar la ley tomamos en cuenta los fines que ésta persigue y la política pública que la inspira, considerando las consecuencias que conlleva la interpretación". *Pueblo v. APS Healthcare of P.R., supra,* a la pág. 388. *Véase,* además, *Pacheco v. Vargas, Alcaide,* 120 DPR 404, 409 (1988).

### E.

En nuestro ordenamiento jurídico, el "[a]sesinato es dar muerte a un ser humano a propósito, con conocimiento o temerariamente", según dispone el Art. 92 del Código Penal (2012), 33 LPRA sec. 5141. En armonía con lo anterior, el Art. 93 de la precitada ley instaura una serie de instancias que constituyen asesinato en primer grado. 33 LPRA sec. 5142. Sobre este particular, el Art. 94 del Código Penal, 33 LPRA sec. 5143, prescribe que "[a] la persona convicta de asesinato en primer grado se le impondrá pena de reclusión por un término fijo de noventa y nueve (99) años".

En lo pertinente al recurso ante nos, es menester establecer que, el inciso (e) del referido Art. 93 tipifica actualmente el delito del feminicidio como asesinato en primer grado. Ahora bien,

durante el transcurso del tiempo, dicho inciso ha sufrido una serie de enmiendas que han permitido precisar los elementos objetivos que configuran este delito, y asimismo, lo han atemperado a las circunstancias particulares que experimenta la sociedad puertorriqueña. Veamos.

Tras la aprobación del Código Penal (2012), Ley Núm. 146-2012, 33 LPRA sec. 5001, la Asamblea Legislativa de Puerto Rico derogó la Ley Núm. 149-2004, es decir el Código Penal (2004), 33 LPRA ant. sec. 4629. En la Exposición de Motivos del Código Penal (2012), *supra*, a la pág. 1, la legislatura reconoció el alcance de su responsabilidad constitucional, de la siguiente manera:

> *La Asamblea Legislativa tiene la responsabilidad constitucional de salvaguardar la vida, propiedad y seguridad de todos los miembros de nuestra sociedad. En cumplimiento de dicha responsabilidad constitucional, corresponde tomar las medidas necesarias para prevenir, controlar y reducir la incidencia de la actividad criminal.*
>
> *La formulación de leyes penales es un proceso continuo que obedece a las condiciones sociales en determinado momento histórico. Según expresan las teorías de legislación penal, todo Código Penal debe ser el reflejo diáfano y genuino de los valores de la sociedad para la cual se legisla. Debe ser realista, acorde con los tiempos que se viven y lo suficientemente abarcador y flexible como para que se proyecte hacia un futuro previsible. Debe, además, ser susceptible de ajuste para atemperarlo a las situaciones cambiantes, según éstas suceden. Conforme fue reconocido en la Reforma Penal de 1974, el Código Penal no puede estar al servicio de minorías en la sociedad ni obedecer a los caprichos personales o individuales de unos y otros. Tiene que ineludiblemente responder al consenso de todos los sectores y de todos los intereses, interpretados en la forma más amplia y coherente posible.*

A su vez, al aprobar este Código Penal, nuestro Poder Legislativo precisó que "[e]sta medida legislativa representa un esfuerzo legítimo para reformular nuestro ordenamiento jurídico penal, como un instrumento eficaz para la administración de la justicia criminal y devolver a la ciudadanía la seguridad jurídica que tanto merece". Exposición de Motivos, Código Penal (2012), *supra*, a la pág. 4. En virtud de ello, la Asamblea Legislativa

adoptó el inciso (e) del Art. 93 del Código Penal (2012), *supra,* cuyo texto original leía así:

> *Artículo 93.- Grados de asesinato.*
> *Constituye asesinato en primer grado:*
> .        .        .        .        .        .        .        .
> *(e) Toda muerte en la cual la víctima es una mujer y al cometerse el delito concurre alguna de las siguientes circunstancias:*
> *(1) Que haya intentado establecer o restablecer una relación de pareja o de intimidad con la víctima; o*
> *(2) Que mantenga o haya mantenido con la víctima relaciones familiares, conyugales, de convivencia, de intimidad o noviazgo; o*
> *(3) Que sea el resultado de la reiterada violencia en contra de la víctima.*

Luego, con el fin de precisar el contenido de inciso (e), la legislatura en el año 2014 sustituyó la palabra "muerte" por el término "asesinato", al aprobar la Ley Núm. 246-2014. No obstante, con posterioridad, en el año 2020, mediante la Ley Núm. 157-2020, enmendó el inciso (e) para incluir una cuarta circunstancia, según se esboza a continuación:

> *Artículo 93.- Asesinato*
>
> *Constituye asesinato en primer grado:*
>
> .        .        .        .        .        .        .        .
>
> *(e) Todo asesinato en el cual la víctima es una mujer y al cometerse el delito concurre alguna de las siguientes circunstancias: (1) Que haya intentado establecer o restablecer una relación de pareja o de intimidad con la víctima;(2) Que mantenga o haya mantenido con la víctima relaciones familiares, conyugales, de convivencia, de intimidad o noviazgo; (3) Que sea el resultado de la reiterada violencia en contra de la víctima; o 4) Que existan antecedentes penales de cualquier tipo de violencia doméstica o por acecho en contra de la víctima*

Mediante dicha legislación, también se estableció que el Departamento de Justicia, en conjunto con el Negociado de la Policía de Puerto Rico y el Instituto de Ciencias Forenses de Puerto Rico, desarrollarían un protocolo de investigación para los casos de muertes violentas contra las mujeres.  Sec. 3, Ley Núm. 157-2020. Asimismo, se ordenó que el Instituto de Estadística de Puerto Rico,

en colaboración con el Negociado de la Policía, el Departamento de Salud y el Instituto de Ciencias Forenses, establecieran un sistema de compilación y manejo de datos estadísticos sobre estas muertes. Sec. 4, Ley Núm. 157-2020.

No obstante, con el propósito de fortalecer esta política pública, en el año 2021, la Asamblea Legislativa de Puerto Rico adoptó la Ley Núm. 40-2021. En referencia a la Ley Núm. 157-2020, reconoció que "al final del proceso legislativo, se aprobó una ley que deja a Puerto Rico con un Código Penal que pretende proteger los derechos de la mujer, pero no reconoce el término feminicidio y mucho menos el término transfeminicidio". Exposición de Motivos, Ley Núm. 40-2021, a la pág. 3. En vista de lo anterior, se enmendó el Art. 93(e) del Código Penal, *supra*, para tipificar expresamente el feminicidio y el transfeminicidio como asesinatos en primer grado y ampliar las circunstancias que configuran estos delitos.

En aras de brindar un contexto sobre esta enmienda, la legislatura reconoció que "Puerto Rico lleva décadas mostrando un aumento alarmante en muertes violentas de mujeres y mujeres transgénero". Exposición de Motivos, Ley Núm. 40-2021, a la pág. 1. Además, identificó la existencia de un problema en la documentación rigurosa sobre la situación de los feminicidios y la divulgación de tal información a la ciudadanía. *Íd.*, a la pág. 2. En esa línea, nuestro Poder Legislativo aludió al informe publicado en el 2018 por las organizaciones Proyecto Matria y Kilómetro Cero:

> *"[L]a recolección y análisis de información sobre feminicidios son herramientas fundamentales para determinar su magnitud, entender sus patrones y tendencias y establecer comparaciones internacionales que sirvan de instrumentos para evaluar los éxitos y los fracasos de los esfuerzos de prevención. Íd.* (citando a *La persistencia de la indolencia: Feminicidios en Puerto Rico 2014-2018,* a la pág. 9).

De conformidad con lo expuesto, la Asamblea Legislativa también hizo referencia al estudio *El feminicidio en Puerto Rico 2000-2014: Características sociodemográficas de la víctima y el evento*, de la demógrafa Wandimar Matoy, quien concluyó que:

> *[e]n el estudio de los homicidios, hay que segregar por sexo, porque los asesinatos ocurren, en su mayoría, por la carga que se le atribuye al género, y considerando las limitaciones e invisibilidades de la categoría 'sexo' en los estudios estadísticos. No podemos hablar de homicidios si no hablamos de las identidades de género, sus roles y sus violencias. Por eso, los asesinatos de las mujeres hay que nombrarlos como tal, como feminicidios.* Exposición de Motivos, Ley Núm. 40-2021, a la pág. 2.

En vista de lo anterior, nuestra legislatura subrayó lo siguiente:

> *Mientras no existan mecanismos confiables y comparables para la recolección de datos para cierto tipo de crimen, no existirán formas apropiadas para entenderlo ni estrategias efectivas para combatirlo. Véase, Academic Council on the United Nations System: Establishing a Feminicide Watch in Every Country (2017). Tales mecanismos no pueden establecerse sin que se dé el primer paso: llamar al delito por su nombre apropiado y distinguir claramente sus elementos constitutivos. Por eso, esta Asamblea Legislativa da ese primer paso mediante la presente Ley, confiando en que a la misma le seguirán medidas adicionales para proteger y defender la vida y los derechos de las mujeres y mujeres transgénero en nuestra isla.* Íd., a la pág. 3.

Al amparo de su facultad constitucional[5], nuestro Poder Legislativo finalmente enmendó el Art. 93(e) del Código Penal (2012), y tipificó el feminicidio como asesinato en primer grado, según lee a continuación:

> *Artículo 93. — Grados de asesinato. (33 L.P.R.A. § 5142)*
>
> *Constituye asesinato en primer grado:*
>
> .    .    .    .    .    .    .    .
>
> **(e) Cuando ocurran las circunstancias establecidas en este inciso, el delito de asesinato se identificará como feminicidio. Cualquier sentencia condenatoria emitida por razón de**

---

[5] El Tribunal Supremo de Puerto Rico "ha señalado, como axioma elemental, que la Asamblea Legislativa tiene la facultad exclusiva de tipificar los delitos e imponer castigos". *Rodríguez Rodríguez v. E.L.A., supra*, a la pág. 569; *Pueblo v. Martínez Torres*, 116 DPR 793, 796 (1986).

*asesinato en esta modalidad de feminicidio indicará tal hecho específicamente.*

*Se considerará feminicidio todo asesinato en el cual la víctima es una mujer cuando al cometerse el delito concurre alguna de las siguientes circunstancias:*

*(1) La muerte haya ocurrido al perpetrarse algún delito de maltrato, maltrato agravado, maltrato mediante restricción de la libertad, estrangulamiento, sofocación o asfixie posicional o agresión sexual conyugal contemplados en la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como la "Ley para la Protección e Intervención de la Violencia Doméstica, según enmendada".*

*(2) La víctima presente signos de violencia sexual de cualquier tipo o signos de estrangulamiento, sofocación o asfixie posicional de cualquier tipo.*

*(3) El victimario (a) haya infligido en la víctima lesiones o mutilaciones, previas o posteriores a la privación de la vida o actos de necrofilia;*

*(4) Existan antecedentes penales por cualquier delito relacionado con violencia y/o agresiones o en el ámbito familiar, laboral o escolar, académico o cualquier otro, del victimario en contra de la víctima;*

*(5) El sujeto haya realizado actos o manifestaciones esporádicas o reiteradas, de violencia en contra de la víctima, independientemente de que los hechos fueran denunciados o no por la víctima;*

***(6) El victimario haya tenido o haya intentado establecer o restablecer con la víctima una relación sentimental, conyugal, de pareja, amistad, convivencia, intimidad, afectiva, de noviazgo o de confianza; o cualquier otra relación de hecho;***

*(7) Existan datos que establezcan que hubo amenazas relacionadas con el hecho delictuoso, acoso, acecho o lesiones del victimario en contra de la víctima;*

*(8) El victimario (a) haya privado a la víctima de establecer cualquier tipo de comunicación verbal, escrita o visual, con otras personas en cualquier periodo de tiempo previo a la privación de la vida;*

*(9) El victimario (a) haya abandonado, expuesto o depositado el cuerpo de la víctima en un lugar público;*

*(10) Exista o haya existido entre el victimario y la víctima, una relación laboral, docente o cualquier otra que implique superioridad, ventaja o establezca una relación de poder a favor del victimario (a);*

*(11) El asesinato haya ocurrido en presencia de las hijas o hijos de la víctima.* (Énfasis nuestro).

**F.**

Como norma general, la determinación de causa probable alcanzada en la vista preliminar goza de presunción legal de

corrección. *Pueblo v. Nieves Cabán*, 201 DPR 853, 866 (2019). No obstante, la parte que enfrenta el procedimiento penal tiene derecho a impugnar este procedimiento mediante una solicitud de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, 34 LPRA Ap. II, R. 64. Esta disposición reglamentaria establece que procederá la desestimación por el siguiente fundamento:

> *(p) Que se ha presentado contra el acusado una acusación o denuncia, o algún cargo de las mismas, sin que se hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, **con arreglo a la ley y a derecho**. Íd.* (Énfasis nuestro).

La regla precitada otorga un remedio procesal cuando se entiende que la determinación de causa probable para acusar se alcanzó sin arreglo a la ley y a derecho. *Pueblo v. Pérez Delgado*; 211 DPR 654, 666 (2023); *Pueblo v. Guadalupe Rivera*, 206 DPR 616, 626 (2021). De acuerdo con la interpretación jurisprudencial, una petición desestimatoria a tenor con esta regla prosperará en dos escenarios: (1) cuando se infringió alguno de los derechos o requisitos procesales de la vista preliminar, o (2) cuando se determinó causa probable para acusar, pese a la ausencia total de prueba sobre alguno de los elementos del delito imputado, incluido, entre estos, la prueba sobre la conexión del acusado. *Pueblo v. Pérez Delgado, supra,* a la pág. 666. Ambos fundamentos requieren una demostración clara del error que se imputa al magistrado, pues toda determinación de causa probable para acusar goza de una presunción de corrección. *Pueblo v. Fernández Rodríguez*, 183 DPR 770, 800 (2011); *Pueblo v. Rivera Vázquez*, 177 DPR 868, 878 (2010).

### III.

De entrada, establecemos que, de conformidad con los criterios recogidos en la Regla 40 del Reglamento del Tribunal de

Apelaciones, *supra*, este foro intermedio apelativo se encuentra en posición de expedir el auto solicitado. En virtud de la discreción que poseemos, procedemos a resolver la controversia ante nuestra consideración.

En su recurso, el Sr. Carrión Santos señala que el Art. 93(e)(6) del Código Penal, *supra*, contraviene con la cláusula de la igual protección de las leyes, por discrimen por razón de sexo. Argumenta que, cuando la víctima es una mujer se le imputa al acusado el delito de feminicidio, y no asesinato atenuado. En tal escenario, considera que queda expuesto a una pena de 99 años, sin que exista la intención requerida para la comisión del asesinato. Por otro lado, manifiesta que el Art. 93(e)(6) del Código Penal (2012), *supra*, presenta problemas de vaguedad. En vista de ello, nos peticiona que: (1) revoquemos el dictamen recurrido, (2) declaremos inconstitucional el referido artículo, y consecuentemente, (3) desestimemos la acusación presentada en su contra.

Por su parte, el Pueblo de Puerto Rico, representado por la Oficina del Procurador General, arguye que el delito de feminicidio no incide en el derecho a la igual protección de las leyes. Precisa que el lenguaje del Art. 93(e) del Código Penal, *supra*, es neutro, pues el sujeto activo puede ser tanto un hombre como una mujer, por lo que, no afecta a una categoría sospechosa. Por consiguiente, razona que el delito impugnado supera el análisis constitucional, incluso bajo el escrutinio estricto, si así este foro apelativo considerase evaluarlo. Por último, aduce que el precitado artículo no adolece de vaguedad, porque una persona de inteligencia promedio puede discernir y comprender el acto prohibido.

Luego de un análisis sosegado del recurso, a la luz de derecho vigente, determinamos que el foro primario procedió

correctamente al denegar la moción en torno al argumento inconstitucional y respecto a la desestimación solicitada por el peticionario al amparo de la Regla 64(p) de Procedimiento Criminal, *supra.* Adelantamos que el Art. 93(e)(6) del Código Penal, *supra,* no vulnera la garantía constitucional de la igual protección de las leyes, ni adolece de vaguedad. Por tanto, colegimos que la acusación alcanzada, tras la celebración de la vista preliminar, no se aparta del arreglo de ley y derecho que rige nuestro ordenamiento jurídico. Veamos.[6]

Como cuestión principal, nos corresponde atender la controversia jurisdiccional levantada por el Procurador General. En esencia, la parte recurrida aduce que el Sr. Carrión Santos carece de legitimación activa para presentar los planteamientos constitucionales. No le asiste la razón. Surge del expediente ante nos que, el peticionario actualmente enfrenta un proceso penal ante el foro primario por violación al Art. 93(e)(6) del Código Penal, *supra.* Lo anterior nos devela que su caso será examinado bajo los elementos del referido artículo, el cual él considera que es inconstitucional.

En vista de tales circunstancias, el Sr. Carrión Santos ha demostrado que pudiese estar expuesto a un daño claro y palpable, es decir, no abstracto ni hipotético, en caso de que la precitada disposición legal resulte inconstitucional. Además, este evidenció que existe una conexión entre el daño alegado (entiéndase, violación constitucional a la igual protección a las leyes y el debido proceso de ley) y la causa de acción ejercitada a nivel apelativo, que está contemplada bajo el palio de nuestra

---

[6] Nos corresponde puntualizar que, en nuestro análisis nos limitaremos a dilucidar los señalamientos esbozados por el peticionario en torno al Art. 93(e)(6) del Código Penal (2012), *supra.* Precisamos lo anterior, toda vez que el Sr. Carrión Santos nos invita a considerar la Sentencia (TA2025CE00195) dictada el 31 de octubre de 2025, por este Tribunal de Apelaciones, en la cual se decretó la inconstitucionalidad del Art. 93(e)(5) del Código Penal, *supra.* No obstante, precisamos que en aquella ocasión este foro intermedio apelativo examinó el inciso (5) del aludido artículo penal en atención a unas circunstancias particulares, distantes a las del caso presente. A su vez, advertimos que el referido dictamen apelativo no constituye un precedente para fines de esta Sentencia.

Constitución y las legislaciones aplicables. Por consiguiente, razonamos que el peticionario constató que está legitimado para comparecer ante este foro intermedio apelativo y presentar su recurso, el cual radicó en un contexto adecuado, lo cual permite su consideración.

Superado el análisis jurisdiccional, en primer lugar, nos corresponde resolver si el Art. 93(e)(6) del Código Penal, *supra*, contraviene con la cláusula constitucional de la igual protección de las leyes. Tras un examen cuidadoso del aludido precepto, en atención a nuestro estado de derecho, establecemos que el delito impugnado no incide en la garantía constitucional que protege al Sr. Carrión Santos de discrímenes arbitrarios por parte del Estado. Veamos.

Recordemos que, la igual protección de las leyes "no exige que siempre se dé un trato igual a todos los ciudadanos, sino que prohíbe un trato desigual e injustificado". *Comisionado Electoral v. Pres. CEE et al.*, *supra* (citando a *Domínguez Castro et al. v. E.L.A. I*, *supra*, a la pág. 71). Con este principio en mente, evaluamos con detenimiento el Art. 93(e)(6) del Código Penal, *supra*, cuyo contenido preceptúa los elementos que tipifican el feminicidio. En específico, dicho artículo, bajo el aludido inciso, penaliza el asesinato en primer grado en aquellas circunstancias en las cuales la víctima es una mujer y se haya tenido o haya intentado establecer o restablecer con esta una relación sentimental, conyugal, de pareja, amistad, convivencia, intimidad, afectiva, de noviazgo o de confianza; o cualquier otra relación de hecho.

De acuerdo con el contenido del Art. 93(e)(6) del Código Penal, *supra*, el sujeto pasivo (víctima) es una mujer. Ahora bien, el sujeto activo (victimario) pudiese ser tanto un hombre como una mujer. Por tanto, contrario a lo argumentado por el peticionario, somos del criterio de que no existe una categoría sospechosa

afectada de modo desigual e injustificado por dicho precepto. Precisamos, a su vez que, el hecho de que este delito se configure cuando la víctima es una mujer no implica que exista un trato desigual contra el acusado. Ello, pues, el Art. 93(e)(6) del Código Penal, *supra*, no crea un delito distinto con una pena mayor, ni constituye un agravante por la víctima ser una mujer. Por consiguiente, razonamos que el artículo cuestionado, bajo dicho inciso, supera el análisis de la igual protección de las leyes, toda vez que su lenguaje es neutral, y en efecto, no constituye una discriminación indebida por parte del Estado.

Ahora bien, ante los argumentos levantados por el Sr. Carrión Santos, debemos puntualizar que, la adopción el Art. 93(e) del Código Penal, *supra*, no aconteció en abstracción de contexto. El desarrollo de este texto legislativo, según se discutió en el acápite anterior, responde al problema social que Puerto Rico experimenta, tras el aumento alarmante de muertes violentas de mujeres. Véase, Exposición de Motivos, Ley Núm. 40-2021, *supra*, a la pág. 1. A raíz de esta realidad, nuestra Asamblea Legislativa tipificó el delito de feminicidio como asesinato en primer grado, y delimitó sus vertientes circunstanciales de manera precisa, como adecuadamente lo demuestra el inciso (e)(6) del Art. 93 del Código Penal, *supra*. Así, al adoptar este delito, nuestro ordenamiento pretende recopilar aquella documentación rigurosa que facilite comprender y atender la magnitud y los patrones que rodean a estos casos. Igualmente, en virtud del Art. 93(e) del Código Penal, *supra*, se procura prevenir esta conducta antijurídica y punible que hoy reconocemos como feminicidio. Véanse, Secs. 3 y 4, Ley Núm. 157-2020, *supra*. Así dispuesto, bajo este contexto, no advertimos que, el Estado haya incidido en el derecho a la igual protección de las leyes al aprobar el inciso (e)(6) del artículo penal aquí impugnado.

Atendido el asunto anterior, nos compete, en segundo lugar, evaluar si el Art. 93(e)(6) del Código Penal, *supra*, adolece de vaguedad. Respondemos en la negativa. A esos efectos, conviene revisitar[7] el precitado artículo:

> *Artículo 93. — Grados de asesinato. (33 L.P.R.A. § 5142)*
>
> *Constituye asesinato en primer grado:*
>
> .    .    .    .    .    .    .    .
>
> *(6) El victimario haya tenido o haya intentado establecer o restablecer con la víctima una relación sentimental, conyugal, de pareja, amistad, convivencia, intimidad, afectiva, de noviazgo o de confianza; o cualquier otra relación de hecho.*

Una lectura detenida de este texto legislativo nos revela que las palabras que tipifican el delito de feminicidio son precisas, es decir, están bien definidas, y a su vez, no resultan ajenas al ordenamiento jurídico puertorriqueño. Así, pues, los términos seleccionados para establecer los elementos delictivos de dicho inciso responden a nuestra realidad social, cultural e histórica, según se adelantó en la Exposición de Motivos de la Ley Núm. 40-2021.

En esa dirección, precisamos que, el Art. 93(e)(6) del Código Penal, *supra,* no adolece de vaguedad, toda vez que: (1) permite que una persona de inteligencia promedio quede debidamente advertida del acto que se pretende penalizar; (2) no se presta para una aplicación arbitraria y discriminatoria; y (3) tampoco interfiere con el ejercicio de derechos fundamentales garantizados en nuestra Constitución. De modo similar, contemplamos que el lenguaje contenido en el precitado artículo, con su respectivo inciso, no es excesivamente amplio, puesto que provee unos

---

[7] En nuestro proceso de comprensión lectora y análisis jurídico, acudimos a los parámetros interpretativos dispuestos en el Art. 12 del Código Penal, 33 LPRA sec. 5012*:*

> *Las palabras y frases se interpretarán según el contexto y el significado sancionado por el uso común y corriente.*
>
> *Las voces usadas en este Código en el tiempo presente incluyen también el futuro; las usadas en el género masculino incluyen el femenino y el neutro, salvo los casos en que tal interpretación resulte absurda; el número singular incluye el plural y el plural incluye el singular.*

estándares jurídicos determinados para evaluar la conducta tipificada, lo cual evita una aplicación injusta de la ley. A la luz de ese análisis, colegimos que el precepto aludido no coloca al Sr. Carrión Santos en un estado de indefensión, ni incide en su debido proceso de ley. A la luz de esta conclusión, no procede la declaración de nulidad del Art. 93(e)(6) del Código Penal, *supra*, pues la conducta tipificada está debidamente definida, de conformidad al principio de legalidad que impera en nuestra jurisdicción.

En vista lo anterior, reiteramos que el Art. 93(e)(6) del Código Penal, *supra*, no incide en el derecho a la igual protección de las leyes, ni tampoco adolece de vaguedad. Por consiguiente, concluimos que no procede la desestimación de la acusación, alcanzada de conformidad con el arreglo de ley y derecho, según preceptúa la Regla 64(p) de Procedimiento Criminal, *supra*. En virtud de ello, confirmamos el dictamen recurrido, pues no refleja prejuicio, parcialidad o error manifiesto en la interpretación o la aplicación de norma procesal o sustantiva aplicable al campo jurídico, por parte del foro primario.

## IV.

Por los fundamentos que anteceden, los que hacemos formar parte de esta Sentencia, expedimos el auto de *Certiorari*, y confirmamos la Resolución emitida el 4 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Se devuelve el caso al foro primario para la continuidad de los procedimientos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones